
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GLENDA PALMER, as surviving mother, personal representative of the Estate of Timothy Lucero and as Guardian of D.L.; D. L., a minor child; LEROY L. LUCERO, Sr., surviving father of Timothy L. Lucero, deceased,<br><br>    Plaintiffs - Appellees,<br><br> v.<br><br>ARIZONA DEPARTMENT OF CORRECTIONS; ARIZONA, STATE OF; RONALD CARLSON; ROBERT STEWART,<br><br>    Defendants,<br><br>UNKNOWN CARLSON; UNKNOWN GAMBLIN; UNKNOWN STEWART,<br><br>    Defendants,<br><br> And<br><br>PRESTON GAMBLIN, Corrections officer at ASPC Eyman, | No. 12-16340<br><br>D.C. No. 2:09-cv-01791-JWS<br><br>MEMORANDUM[*] |

---

   [*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Defendant - Appellant.

Appeal from the United States District Court
for the District of Arizona
John W. Sedwick, District Judge, Presiding

Argued and Submitted May 15, 2014
San Francisco, California

Before: GRABER, W. FLETCHER, and PAEZ, Circuit Judges.

On September 4, 2008, Timothy L. Lucero was stabbed to death by another inmate while in the custody of the Arizona Department of Corrections ("ADC") at the Arizona State Prison Complex ("ASPC")-Tucson. Four months before his death, Lucero had been transferred to ASPC-Tucson from Special Management Unit I ("SMU I"), a maximum-custody facility, at ASPC-Eyman. ASPC-Tucson was a lower-security facility. Plaintiffs-Appellees are Lucero's survivors. Defendant-Appellant Preston Gamblin is a prison official at SMU I.

Gamblin appeals the district court's denial of his motion for summary judgment on his defense of qualified immunity from plaintiffs' § 1983 deliberate indifference claim. Plaintiffs assert that Gamblin violated Lucero's Eighth Amendment rights by failing to initiate the protective-segregation process required

2

under prison policy at SMU I upon learning of threats of mortal harm to Lucero. We affirm.

Under ADC's protective-segregation policy, known as DI 67, any inmate may make a written or verbal request for protection against other inmates. Such a request triggers a review process to determine whether the inmate requires long-term protective segregation. DI 67 requires "any staff member . . . who becomes aware of a threat to an inmate [to] immediately isolate the inmate in a safe, reasonably secure area and notify the Shift Commander."

Gamblin learned of specific, severe threats to Lucero's safety on two occasions. First, on January 25, 2008, he interviewed Lucero about the murder of another inmate, Christopher Wathen. Gamblin wrote in his report that "since [Lucero] . . . refused to carry out the assault on I/M Wathen, I/M Lucero . . . had many individuals inform him that he is going to get the same fate as I/M Wathen." There is evidence that this report went only to Gamblin's supervisor, Sergeant Carlson, and did not make it into any personnel file for Lucero. It is undisputed that the report did not trigger the DI 67 process. There is evidence from which a reasonable juror could conclude that Gamblin knew that the report would stay in Carlson's file and would not trigger the DI 67 process.

Second, on January 31, 2008, Gamblin escorted Lucero to an interview with ADC Special Investigator Henry Ross and Yuma County Attorney's Office attorneys who were investigating Wathen's murder. During that interview, Lucero provided information about the Wathen murder. Lucero stated several times that his life was in danger because he had refused to carry out the assault on Wathen and because he was divulging information about the Aryan Brotherhood's operations. Gamblin was in a position to hear Lucero's statements.

Despite learning of these serious threats to Lucero's safety, it is undisputed that Gamblin did not initiate the DI 67 process. Lucero was likely safely isolated at that time because he was then detained at SMU I, where he was housed in a single cell and had limited contact with other inmates. But Gamblin has placed nothing in the record to show that he notified the Shift Commander of the danger to Lucero, as required by ADC's mandatory policy.

Taking the facts in the light most favorable to the plaintiffs, a reasonable juror could conclude that Gamblin's failure to notify the Shift Commander, and thereby to set the DI 67 process in motion, evinced deliberate indifference to Lucero's safety. A reasonable officer would have known that the DI 67 process would almost certainly have resulted in a formal order providing protective segregation for Lucero. A reasonable officer would also have known that, in the

4

absence of the DI 67 process and resulting formal order, Lucero was at some risk of being transferred to an unsecure location.  The degree of the risk that would have been known to Gamblin is a question of fact that can be determined only at trial. We therefore conclude that Gamblin was not entitled to qualified immunity on summary judgment.

**AFFIRMED.**

Palmer v. Gamblin, No. 12-16340

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

Even taking all facts in the light most favorable to Plaintiffs, a reasonable officer in Gamblin's circumstances could not have known that it would be deliberate indifference to fail to prevent an attack that occurred months later in a different, less secure facility. Deliberate indifference requires that a prison official "know of and disregard[] excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Lucero was <u>not</u> attacked in the facility in which Gamblin worked. As the majority recognizes, Lucero was housed there safely, in a single cell and with limited contact with other inmates. It is undisputed that Gamblin documented Lucero's concerns in a report to his supervisor and that Lucero was not harmed at that facility. Rather, Lucero was not attacked until months after his interaction with Gamblin, and only after being transferred to a less secure facility. There is no evidence that Gamblin knew of the possibility that Lucero would be transferred and no evidence that Gamblin was involved in the transfer process in any way.

We require that prison officials act in the face of a known future risk to

prisoners, <u>Farmer</u>, 511 U.S. at 837, but we also require, at the very least, that the risk be <u>known</u>, <u>Lemire v. Cal. Dep't of Corr. & Rehab.</u>, 726 F.3d 1062, 1077–78 (9th Cir. 2013); <u>see</u> <u>id.</u> at 1078 ("Plaintiffs must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk to the [prisoner's] safety."). In order to hold Gamblin liable we must hold that he reasonably knew that his failure to notify the Shift Commander of Lucero's concerns would lead to Lucero's being transferred, and being transferred to a less secure facility, to which Lucero would <u>not</u> object, where Lucero would be exposed to his enemies. Perhaps the Department or some other defendant might be liable, but Gamblin, even assuming a deliberate or hostile state of mind, could not have foreseen this highly speculative future risk. Because no genuine issue of material fact exists as to whether Gamblin knew of the risk that Lucero might be transferred to a less secure facility and might be attacked at that other facility, Gamblin is entitled to qualified immunity.